**SIGNED THIS: March 21, 2013**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 11-71615 |
| SCOTT D. HOERR and ANNA HOERR, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| EBC ASSET INVESTMENT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 11-07092 |
| ) | |
| SCOTT D. HOERR, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

This case is before the Court for decision after trial of the Amended Complaint to Determine

-1-

Dischargeability of Debt filed by the Plaintiff, EBC Asset Investment, Inc. ("EBC"), against the Defendant, Scott. D. Hoerr. EBC claims that Mr. Hoerr sold farm equipment which was EBC's collateral and failed to remit the proceeds to EBC. EBC asserts that Mr. Hoerr's conduct constituted a willful and malicious injury to EBC and its property interests and, therefore, Mr. Hoerr's debt to EBC should be declared nondischargeable. Because EBC failed to carry its burden of proof that Mr. Hoerr willfully and maliciously injured it or its security interest in collateral, the debt Mr. Hoerr owes to EBC will not be excepted from discharge.

## I. FACTUAL & PROCEDURAL BACKGROUND

For more than thirty years prior to filing this case, Mr. Hoerr was involved in farming. Mr. Hoerr's farming operation mainly consisted of growing corn and soybeans, but he also had a cattle operation for a short time. At the operation's peak, Mr. Hoerr farmed about 1800 acres; in 2011, his last year in agriculture, Mr. Hoerr farmed approximately 82 acres. Mr. Hoerr rented most of the land he farmed.

While engaged in farming, Mr. Hoerr typically borrowed on an annual basis, primarily for crop inputs and to meet family living expenses. One of the banks with which Mr. Hoerr had a line of credit was Corn Belt Bank & Trust Company ("Corn Belt"), of Pittsfield, Illinois. As reflected in a Promissory Note dated April 4, 2007 ("2007 Note"), Mr. Hoerr and his co-debtor and then-wife Anna Hoerr borrowed $270,000 from Corn Belt. The 2007 Note called for five annual payments of $68,533.94, with the final payment due on April 4, 2012. Also on April 4, 2007, the Hoerrs executed with Corn Belt an Agricultural Security Agreement ("2007 Security Agreement") in which the Hoerrs granted Corn Belt a lien on "[a]ll Inventory, Chattel Paper, Accounts, Equipment, General Intangibles, Crops, Farm Products, Livestock (including all increase and supplies) and Farm Equipment." Corn Belt properly perfected its security interest in the Hoerrs' assets in July 2007.

Additionally, on April 4, 2007, the Hoerrs executed a separate note in the principal amount of $450,000 to Corn Belt. On July 18, 2008, the Hoerrs executed a new Promissory Note ("2008 Note") with Corn Belt in the amount of $450,000, which was a renewal of the 2007 obligation in the same amount. The 2008 Note was due and payable in full in July 2009.

In February 2009, the Federal Deposit Insurance Corporation ("FDIC") took over Corn Belt as receiver. The Hoerrs then turned to Bank of Springfield ("BOS") for financing for their farming operation. As a condition of the BOS financing, the FDIC signed a subordination agreement with respect to the Hoerrs' 2009 crop, giving BOS a first lien on that crop. The Hoerrs also borrowed money from BOS for their farming operation in 2010 and 2011.

The FDIC ultimately transferred the interest of Corn Belt in the 2007 Note, the 2008 Note, and the 2007 Security Agreement to Ciras, LLC, which later transferred the interests to EBC. Mr. Hoerr had very limited communication with EBC after it acquired the Notes. In April 2009, the Hoerrs failed to make the required annual payment on the 2007 Note, and in July 2009, they failed to make full payment on the 2008 Note.

In 2010, Mr. Hoerr learned that he would not be able to lease a significant amount of the ground he had farmed in prior years. Because the loss of the lease resulted in a dramatic reduction in his operation, Mr. Hoerr made the decision to sell most of his farm equipment to reduce the debt and interest payments to the John Deere Credit Corporation ("John Deere") which held a first priority purchase money security interest in the equipment. On June 22, 2010, a public auction of the equipment was conducted by Sullivan Auctioneers, LLC. of Hamilton, Illinois. The equipment sold for $820,545.00, of which $741,743.20 went to pay off John Deere's lien. After deducting costs of sale of $38,960.50, the net proceeds of $39,841.30 were paid to Mr. Hoerr. The Hoerrs used the proceeds for family living expenses and other miscellaneous expenses and did not remit any of the proceeds to EBC.

Early in 2011, EBC sued the Hoerrs on the 2007 Note and the 2008 Note. On March 24, 2011, EBC obtained judgment against the Hoerrs in the amount of $267,424.08 on the 2007 Note and $339,098.78 on the 2008 Note. The judgment remains unpaid.

The Hoerrs filed their joint, voluntary Chapter 7 petition on June 15, 2011. EBC timely filed its Complaint to Determine Dischargeability against Scott Hoerr on October 24, 2011, and filed its Amended Complaint on October 25, 2011. EBC claims that Mr. Hoerr's sale of farm equipment and his failure to remit the net proceeds to EBC constituted a willful and malicious injury to EBC and its property. In his Answer, Mr. Hoerr admitted the he had sold the equipment without EBC's permission and without paying over the net proceeds to EBC. He asserted, however, that his conduct was neither willful nor malicious.

At trial, EBC called Mr. Hoerr as a witness. He admitted the details of the farm equipment sale and that he spent the net proceeds and did not turn over any of the proceeds to EBC. Mr. Hoerr acknowledged that he now understands that EBC had a junior lien on the equipment and was entitled to the net proceeds after the payment of John Deere and the auction expenses. Mr. Hoerr also testified, however, that his purpose in selling the equipment was to reduce his debt to John Deere and he believed, at the time, that BOS was second in line on the equipment. He also believed — albeit incorrectly — that the subordination agreement signed by the FDIC subordinated all of the lien interests previously held by Corn Belt to BOS. Mr. Hoerr stated that he had informed Brian Hendrian, his banker at BOS, of the equipment sale and that Mr. Hendrian had not raised any objection. Mr. Hoerr thought that it made more sense for him to use the net proceeds for living expenses rather than paying the proceeds over to BOS and then drawing on his BOS line of credit for the living expenses.

EBC also called Mr. Hendrian as a witness. Mr. Hendrian testified that he had previously been employed by Corn Belt and had been the Hoerrs' loan officer when they banked with Corn Belt.

Since April 2008, Mr. Hendrian has been the manager and lending officer at the Quincy, Illinois, branch of BOS and holds the title of Community Bank President. He worked with Mr. Hoerr in providing financing from BOS for the Hoerrs' farming operation beginning in 2009 and continuing through 2011.

Mr. Hendrian testified that Mr. Hoerr told him about the loss of a major farm lease and the need to scale down his operation in 2010. He also confirmed that Mr. Hoerr told him about the equipment auction before it took place. Mr. Hendrian did not recall discussing the specific outcome of the sale with Mr. Hoerr, nor did he recall discussing the application of the net proceeds with Mr. Hoerr. He acknowledged that BOS had no lien on the farm equipment and, therefore, had no claim to any of the sale proceeds. He also admitted that BOS had continued to lend to Mr. Hoerr in 2010 and 2011 without requiring a new subordination agreement from EBC because he misunderstood the original subordination agreement with the FDIC and believed that it was perpetual rather than limited to the 2009 crop.

Counsel for both parties presented arguments at the conclusion of the trial. The matter is ready for decision.

## II. JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334. Determinations regarding the dischargeability of particular debts are core proceedings. 28 U.S.C. §157(b)(2)(I).

## III. LEGAL ANALYSIS

A debtor is not entitled to a discharge of a debt incurred for the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). To succeed in excepting such a debt from discharge, a creditor must establish (1) that the debtor caused an injury

to the creditor, (2) that the debtor's actions were willful, and (3) that the debtor acted maliciously. *First Bankers Trust Co. v. Dade* (*In re Dade*), 2012 WL 1556510, at *6 (Bankr. C.D. Ill. May 1, 2012); *see* 11 U.S.C. §523(a)(6). Additionally, the creditor has to prove the amount of the debt that is nondischargeable. *See N.I.S. Corp. v. Hallahan* (*In re Hallahan*), 936 F.2d 1496, 1502 (7th Cir. 1991).

At trial, neither the first element of EBC's cause of action nor the amount of damage caused by Mr. Hoerr's failure to remit the net sales proceeds to EBC was in dispute. EBC proved that it was injured in the amount of $39,841.30 due to Mr. Hoerr's sale of its collateral and his failure to pay the net proceeds to EBC after payment of superior liens and costs. Thus, the only issue in dispute at the trial was whether Mr. Hoerr's conduct was "willful and malicious."

The Supreme Court has said that "willful" refers to the intent to cause injury, and not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). An injurer "intends" to cause injury when he desires to cause the injury or knows that the injury is substantially certain to happen as a result of his action. *See Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012); *Heritage Bank of Cent. Ill. v. Vogel* (*In re Vogel*), 2005 WL 3506443, at *8 (Bankr. C.D. Ill. Dec. 12, 2005). Reckless or negligent conduct is not "willful." *Geiger*, 523 U.S. at 64. A debtor's actions are "malicious" if they are in conscious disregard of one's duties or lack just cause or excuse. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994); *Vogel*, 2005 WL 3506443, at *8. The Seventh Circuit has said recently that at a minimum, a "willful and malicious injury" is one that the injurer caused knowing he had no legal justification and either seeking to cause the injury or knowing that the injury was highly likely to occur as a result of his act. *Jendusa-Nicolai v. Larsen*, 677 F.3d at 324; *see also The Nat'l Bank v. Buckley* (*In re Buckley*), 2009 WL 400628, at *1-2 (Bankr. C.D. Ill. Feb. 17, 2009). The analysis of whether conduct is "willful and malicious" is often undertaken as though the elements raise a single issue. *Jendusa-Nicolai v.*

*Larsen*, 677 F. 3d at 322-24. A creditor's burden of proof is to establish its cause of action by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

Under certain circumstances, converting a secured creditor's collateral can support a finding of nondischargeability under §523(a)(6). *See Burdick v. Bryant* (*In re Bryant*), 2012 WL 2131947, at *4 (Bankr. C.D. Ill. June 12, 2012). But, a "mere technical conversion" is generally insufficient to make a debt nondischargeable. *Auto Mart, Inc. v. Wendt* (*In re Wendt*), 355 B.R. 769, 775 (Bankr. W.D. Mo. 2006).

Mr. Hoerr's testimony on this issue established that his actions were not willful or malicious and his testimony was the only evidence on the issue. He testified credibly that his purpose in selling the farm equipment was to reduce his indebtedness to John Deere. Mr. Hoerr did not hide the sale. Rather, he used a local auction firm and notified BOS about the sale through his conversations with Mr. Hendrian because he thought BOS had a junior lien on the equipment. Mr. Hoerr's testimony that he did not even think about EBC having an interest in the equipment or a right to the net proceeds was also credible and unrebutted. Both Mr. Hoerr and Mr. Hendrian were confused and mistaken about the terms of the subordination agreement with the FDIC. Although it is not disputed now that EBC had a lien on the net sale proceeds, Mr. Hoerr's explanation of why he failed to think about EBC's interest at the time of the sale was believable and, again, unrebutted.

This case factually resembles *Raritan State Bank v. Adkisson* (*In re Adkisson*), 2001 WL 34076353 (Bankr. C.D. Ill. Apr. 12, 2001) (Perkins, J.). In *Adkisson*, the debtor sold some livestock at two established businesses — Galesburg Livestock Sales, Inc. and Fairview Sale Barn — and failed to remit the proceeds to Raritan State Bank, which had a lien on the livestock. *Id.* at *2. Instead, the debtor used the proceeds to pay his operating and living expenses. *Id.* at *4. Raritan State Bank sued the debtor, seeking a finding that its debt was nondischargeable under §523(a)(6). *Id.* at *2. At trial, the bank failed to prove that the debtor had a subjective intent to injure the bank, and,

accordingly, the Court found that the debtor's failure to remit the proceeds did not constitute a willful and malicious injury. *Id.* at *4.

Here, EBC has established nothing more than that Mr. Hoerr's actions were a "technical conversion" of its collateral, but that is not sufficient under §523(a)(6) to except the debt from discharge. *See Wendt*, 355 B.R. at 775. Mr. Hoerr's purpose in making the sale was to reduce debt so that he could continue his operation on a reduced scale. He made no attempt to hide the sale and, in fact, disclosed the sale willingly to the banker he thought might claim the proceeds. EBC did not introduce any evidence of any subjective intent on the part of Mr. Hoerr to injure it or its interest in the farm equipment. Post-*Geiger*, evidence of a debtor's actual intent to injure the creditor is a required element of establishing a "willful and malicious" injury. *See Avco Fin. Servs. of Billings v. Kidd* (*In re Kidd*), 219 B.R. 278, 285 (Bankr. D. Mont. 1998). In the absence of any proof on the issue of intent, EBC cannot prevail.

### IV. CONCLUSION

This Court finds that EBC has failed to carry its burden of proof that it, or its security interest in the farming equipment, suffered a "willful and malicious injury" as a result of Mr. Hoerr's actions. Therefore, on EBC Asset Investment, Inc.'s Amended Complaint to Determine Dischargeability of Debt, an Order will be entered granting judgment in favor of the Defendant, Scott D. Hoerr, and against the Plaintiff, EBC Asset Investment, Inc.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###